```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

PATRICK HURLEY,

                Plaintiff,

vs.                              Case No.   2:10-cv-334-FtM-29SPC

KENT OF NAPLES, INC., a Florida Corporation, KENT SECURITY OF PALM BEACH, INC., a Florida Corporation, KENT SECURITY SERVICES, INC., a Florida Corporation,

                Defendants.
_____

PATRICK HURLEY,

                Plaintiff,

vs.                              Case No.   2:10-cv-752-FtM-29DNF

GIL NEUMAN, individually and ORLY ALEXANDER, individually,

                Defendants.
_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Plaintiff's Statement of Undisputed Facts, Dispositive Motion For Summary Judgment, and Incorporated Memorandum of Law (Doc. #32) filed on March 24, 2011 and Defendants' Motion for Summary Judgment (Doc. #34) filed on March 29, 2011. Both parties filed Responses (Docs. ## 38, 39) as well as affidavits, and other exhibits in support of their respective briefs. Because there is a material factual dispute as

to whether plaintiff had a serious health condition, both summary judgment motions are denied.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn

v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Id.

**II.**

Plaintiff Patrick Hurley (plaintiff or Hurley) worked for Kent Security[1] from on or about June 1, 2001 until his termination on or about May 1, 2008. At the time of his termination, plaintiff served as the president of Kent Security Naples (KSN). From May 1, 2007 through May 1, 2008, plaintiff worked for Kent Security in excess of 1,250 hours. As the president of KSN, plaintiff reported directly to Defendant Gill Neuman (Neuman), who was the CEO of Kent Security. As CEO, Neuman exercised the right to hire and fire employees, determine rates of pay and scope of duties, as well as schedules of work. Defendant Orly Alexander (Alexander) worked as the CFO for Kent Security. As the CFO, she oversaw all of the financial transactions of Kent Security. Alexander did not supervise plaintiff. Neuman, Alexander, and Alexander's husband, Shlomi Alexander, were the sole owners of Kent Security. During 2007 and 2008, Kent Security had 50 or more employees within a 75 mile radius.

**Plaintiff's Documented Depression**

According to plaintiff's medical records, on or about March 14, 2005, plaintiff was diagnosed by Dr. Andrew J. Dauer, D.O. with sleep problems, depression and anxiety. (Doc. #32-2, p. 14.) At

---

[1] Kent Security Services, Inc., Kent Security Naples and Kent Security Palm Beach are interrelated corporations or an "umbrella of entities" with the same legal mailing address. (See Doc. #32-1, p. 80.) The Court will refer to them collectively as "Kent Security".

the time of his diagnosis, it was recommended that plaintiff go to counseling and start medication. (Id.) In or about February 2007, plaintiff began seeing Fred Stuart (Stuart), a Licensed Clinical Social Worker (LCSW), at Catholic Charities. (Id. at 20.) Plaintiff saw Stuart three times, in late February 2007 and early March 2007, and was counseled for chronic depression and anxiety that was related to his job. Stuart recommended that plaintiff take time off work to manage his stress, and possibly resume anti-depressant medication. (Id. at 23.)

On or about December 21, 2007, plaintiff began seeing a new primary physician, Dr. Carlos Paisan (Dr. Paisan), regarding a "flareup of his anxiety/depression" as well as for unrelated sinus issues. (Id. at 25.) Paisan found that plaintiff "has depression and anxiety secondary to job situation" and prescribed plaintiff a new anti-depressant medication. (Id.) At a follow-up appointment with Dr. Paisan on or about January 21, 2008, Hurley reported that he was less depressed, and Dr. Paisan found that Hurley's depression was improving. (Id. at 26.)

However, in or about February or April 2008, plaintiff resumed seeing Stuart, this time at the David Lawrence Center. Plaintiff told Stuart that he was unable to significantly reduce his elevated stress level and that his depression had deepened. (Id. at 23-24.) After plaintiff was terminated from his job at Kent Security, he returned to therapy with Stuart as his termination made him even

more stressed and depressed.  (Id. at 24, 27.)  On or about May 9, 2008, following his termination, plaintiff again saw Dr. Paisan. At the May 9, 2008 appointment, Dr. Paisan completed a Family and Medical Leave Act of 1993 (FMLA) form for plaintiff.

Plaintiff asserts that his depression caused frequent and episodic panic attacks.  Plaintiff asserts that these panic attacks caused by his depression increased in late 2007 and through May 2008, during which he had 7-15 severe panic attacks per week.  Due to the unpredictable nature of plaintiff's panic attacks, he asserts there were numerous times he left work early, went into work late, or missed entire days from work because he was unable to function in his position as president of KSN.  However, prior to April 28, 2008, plaintiff never asked for leave because of his depression.  In 2006 and 2007, plaintiff did not take time off from work to specifically manage his depression, but he did take other vacation time.

**Plaintiff's Vacation Request/Schedule**

On or about April 29, 2008, plaintiff sent an email to Neuman with the subject "vacation schedule" that stated: "As you know, I have been earning and accruing vacation time at the rate of 4 weeks per year for nearly eight (8) years.  To date, I have taken only a small percentage of it.  Attached is my vacation schedule going forward. The dates are subject to change.  Pat."  (Doc. #32-1, p. 42.)  Attached to this email was a list of 11 vacation periods

spanning the rest of 2008 until the end of 2009. Many of the requested vacation periods centered around holiday weekends. (Id. at 43.) Less than an hour later, on or about April 30, 2009, Neuman responded to plaintiff's vacation request. "Pat, your request has been denied, please schedule a meeting with me to discuss this further." (Id. at 45.)

Later that same day, Hurley responded to Neuman's email. Hurley again stated that he has accrued several weeks of vacation, and further that the email was "not a request it was a schedule." (Id. at 48.) He then stated that if there is a proposed vacation date that conflicts with a business matter he would make a reasonable attempt to accommodate that. Plaintiff continued: "But please know that I have been advised by my medical/health professional that my need to avail myself of the vacation time that I have earned is no longer optional. The vacation schedule I sent to you . . . is FAR less aggressive than I have been advised to take." (Id.) Plaintiff then preceded to bring up other matters that concerned him about his relationship with Neuman, including a retreat idea that was rejected and a bonus that he felt was overdue.

**Plaintiff's Termination**

On or about May 1, 2008, Neuman called Hurley. Hurley contends that during this conversation, he elaborated on his medical condition and that he needed time off to deal with his

depression.  (Doc. #32, p. 13.)  During this conversation, Neuman terminated Hurley by stating that although they "had a great run together" it was "time to part ways." (Doc. #34, p. 9.) According to Neuman, plaintiff was terminated because of his insubordination. Neuman felt that the tone of plaintiff's vacation request and subsequent email were insubordinate and it was "the straw that broke the camel's back."  (Id.)

**Plaintiff's Completed FMLA Form**

On or about May 12, 2008, following plaintiff's termination, plaintiff sent a letter to Neuman: "Pursuant to my e-mails to you dated April 29th and April 30th, 2008, and the phone conversation that I had with you on the morning of May 1st, 2008, I have been and continue to be ill.  Enclosed please find my FMLA form completely filled out."  (Doc. # 32-1, p. 35.)

Dr. Paisan completed the FMLA form.  In the section that describes what is meant by a "serious health condition", Dr. Paisan checked the boxes that correspond to:

2. <u>Absence Plus Treatment</u>

(a) A period of incapacity of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity relating to the same condition), that also involves:

    (1) **Treatment two or more times** by a health care provider, . . .; or
    (2) **Treatment** by a health care provider **on at least one occasion** which results in a **regimen of continuing treatment** under the supervision of the health care provider."
. . .

> 4. <u>Chronic Conditions Requiring Treatments</u>
>
> A **chronic condition** which:
>
> (1) Requires **periodic visits** for treatment by a health care provider, . . .;
> (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition);
> (3) May cause **episodic** rather than a continuing period of incapacity (e.g. asthma, diabetes, epilepsy, etc.).

(Doc. #32-1, p. 36)(emphasis in original). "Incapacity" is defined to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom." (<u>Id.</u> at 36 n.2.) Dr. Paisan described the medical facts which support the FMLA certification as follows: "Patient has some depression and anxiety brought on by multiple factors and job stress. Will need continuing care and counseling and be able to take time off from work to get appropriate care." (<u>Id.</u> at 36.)

In answer to question 5b., "will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in item 6 below)? Dr. Paisan answered "yes" however, Dr. Paisan stated that he "cannot make a determination" as to the probable duration. (<u>Id.</u>) Then, in response to the question, "[i]f the condition is a chronic condition . . . state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity:" Dr. Paisan wrote, "chronic

depression/anxiety, unable to comment on duration and frequency of incapacity." (Id.)

In response to question 7a., "If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?" Dr. Paisan responded, "No." (Id. at 37.) Question 7b., asks "If able to perform some work is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:" Dr. Paisan answered, "will need to reduce the work load and be able to have days off depending on the severity of depression/anxiety." Finally in response to question 7c. which asks, "if neither a nor b applies, is it necessary for the employee to be absent from work for treatment?" Dr. Paisan answered, "At times, depending on course of medical/psychiatric condition." (Id.)

On or about May 24, 2010, plaintiff filed a two-count complaint (Complaint). (Doc. #1.)[2] The Complaint alleges that defendants interfered with plaintiff's Family and Medical Leave Act

---

[2]Plaintiff filed another complaint against Neuman and Alexander, individually, in Case No. 2:10-cv-752-FtM-29DNF. The two cases were consolidated by a February 2, 2011 Order. (See Doc. #29.)

of 1993 rights (Count I) and that they discriminated against plaintiff for exercising his right to leave pursuant to FMLA (Count II). On or about March 24, 2011, plaintiff filed a motion for summary judgment on both counts. (Doc. #32.) On or about March 29, 2011, defendants filed a motion for summary judgment arguing that plaintiff did not have a serious medical condition as defined by the FMLA. (Doc. #34.)

### III.

The Family and Medical Leave Act of 1993 (FMLA) provides that "any employer" who interferes with or denies any rights provided to an employee under the Act is liable for damages. 29 U.S.C. § 2617(a). The Court will first address whether the individual defendants Neuman and Alexander should be held liable under the FMLA. Plaintiff argues that Neuman and Alexander are "employers" as defined by the FMLA. (Doc. #32, p. 30-31.) Defendants argue to the contrary.

Pursuant to the FMLA, any "employer" can be liable for interfering with or denying an employee's FMLA rights. 29 U.S.C. § 2617(a). Title 29 U.S.C. § 2611(4)(A) states that "[t]he term 'employer' . . . includes – any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; . . ." 29 U.S.C. §§ 2611(4)(A)(ii)(I); 29 C.F.R. § 825.14(a). As stated in the applicable Code of Federal Regulation pertaining to the FMLA, "The definition of 'employer' in

section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.14(d). Thus, the Eleventh Circuit has held that courts look to FLSA decisions to determine whether a particular defendant meets the statutory definition of "employer" under FMLA. See Wascura v. Carver, 169 F.3d 683, 686 (11th Cir. 1999).

In, Patel v. Wargo, 803 F.2d 632 (11th Cir. 1986), the Eleventh Circuit addressed when to hold corporate officers personally liable in FLSA suits. "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." Id. at 638. Further, the Court also considers whether the corporate officer has a significant ownership interest, has operational control of compensation of employees, as well as has control over the hiring or firing of employees. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160-61 (11th Cir. 2008)(citing Patel, 803 F.2d at 638).

In this case there is no dispute that Neuman has a significant ownership interest in Kent Security, hired plaintiff, personally supervised plaintiff, had authority over plaintiff's pay, and could

set his schedule. (Doc. #32-1, p. 56.) Thus, the Court finds that Neuman is an "employer" pursuant to the FMLA.

However, Alexander had no direct relationship with plaintiff. Although Alexander has a significant ownership interest in Kent Security, plaintiff did not report to her in any way. In fact, she only exercised that kind of day-to-day operation and direct responsibility over the controller and her legal assistant. (See Doc #32-1, pp. 82-83.) The Court must focus on the role that Alexander did play in Kent Security, not the one that she could have played, if she had chosen. See Alvarez Perez, 515 F.3d at 1161. Thus, plaintiff has failed to provide sufficient evidence that Alexander had authority over the requisite day-to-day operations of Kent Security and had responsibility for the supervision of plaintiff. The Court, therefore, finds that there is genuine issue of material fact as to whether Alexander is an "employer" pursuant to the FMLA.

**VI.**

The Court will now turn to plaintiff's FMLA claims. The FMLA provides eligible employees with up to twelve weeks of unpaid leave annually if a serious health condition makes the employee unable to perform the functions of his or her position as an employee. 29 U.S.C. § 2612(a)(1)(D)[3]; Lowery v. Strength, 356 F. App'x 332, 333

---

[3]The Department of Labor's FMLA regulations were revised, effective January 16, 2009. See 73 Fed. Reg. 67934 *et seq*. (Nov. (continued...)

(11th Cir. 2009). The FMLA also creates a private right of action for equitable relief and money damages for employer violations. 29 U.S.C. §§ 2615(a)(1), 2617(a).

The Eleventh Circuit has recognized that the FMLA creates two types of claims: interference claims, in which an employee asserts that his or her employer denied or otherwise interfered with substantive rights under the FMLA; and retaliation claims, in which an employee asserts that the employer discriminated against him because he or she engaged in activity protected by the FMLA. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006); Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). Both interference and retaliation claims require the employee to establish a serious health condition. Barker v. R.T.G. Furniture Corp., 375 F. App'x 966, 967 (11th Cir. 2010)(citing Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003)).

**A. Interference Claim**

"To state a claim of interference with a [FMLA] substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Lowery, 356 F. App'x at 333 (quoting Strickland, 239 F.3d at 1206-07). "The

---

[3](...continued)
17, 2008). The revised regulations were not in effect at any time relevant to plaintiff's claims and furthermore are not substantively different.

employee need not allege that his employer intended to deny the benefit - the employer's motives are irrelevant." Hurlbert, 439 F.3d at 1293 (internal quotation marks omitted). As stated above, to establish a claim for FMLA interference, Hurley must show that he suffered a "serious health condition" at the time that he asked for leave. Barker, 375 F. App'x at 967.

"A serious health condition is an illness, injury, impairment, or physical or mental condition that involves: (1) inpatient care; or (2) continuing treatment by a health care provider." Lowery, 356 F. App'x at 333. It is undisputed that Hurley did not have inpatient care for his depression. Thus, the Court must look at to whether plaintiff's depression involves "continuing treatment by a health provider."

> A serious health condition involving continuing treatment by a health care provider includes "chronic conditions," which are defined as "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition" that:
>
>> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>>
>> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>>
>> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

Barker, 375 F. App'x at 967 (quoting 29 C.F.R. § 825.115(c)). Under the FMLA, "incapacity" means that due to the serious health condition the employee has the inability to work or cannot perform other daily activities. 29 C.F.R. § 825.113(b).

The parties dispute whether Hurley was ever "incapacitated" due to his depression. He states that he had to leave work early, come in late, or missed some days due to his depression. Additionally, Dr. Paisan, equivocates on the completed FMLA form. While he finds that Hurley needs to reduce his work load, may need to take time off from work, and will need to work intermittently or with a reduced schedule due to his depression, he additionally states that Hurley was not presently incapacitated nor could he "comment on duration and frequency of incapacity". (Doc. #32-1, p. 36.)

Because there is a factual dispute as to whether Hurley had a serious medical condition such that he was unable to perform his job, which is material to whether Hurley was entitled to FMLA leave, the Court must deny both plaintiff's and defendants' summary judgment motions on the interference claim. See Hurlbert, 439 F.3d at 1296.

**B. Retaliation Claim**

"To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is

a causal connection between the protected activity and the adverse action." Hurlbert, 439 F.3d at 1297. Where, as here, there is no direct evidence of discrimination, the McDonnell Douglas[4] burden shifting framework applies. Id.

Thus, "[i]f the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. [ ] If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." Id. (internal citation omitted).

Since there are genuine issues of material fact as to whether Hurley was entitled to FMLA leave, there are also issues of material fact as to whether he engaged in statutorily protected leave. As to the rest of Hurley's prima facie case, the Court notes that Hurley was terminated - an adverse employment action. With regards to pretext, it is undisputed that Hurley was terminated within hours of submitting his leave request. "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Id. at 1298 (citing Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)); see also Wascura v. City of S. Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001).

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Case 2:10-cv-00334-JES-CM   Document 45   Filed 06/07/11   Page 18 of 18 PageID 956

Because there are genuine issues of material fact regarding whether plaintiff had a serious health condition, and whether the defendants' reasons for terminating him were pretextual, the Court finds that it must deny both summary judgment motions on Hurley's retaliation claim.

Accordingly, it is now

**ORDERED**:

1. Plaintiff's Statement of Undisputed Facts, Dispositive Motion For Summary Judgment, and Incorporated Memorandum of Law (Doc. #32) is **DENIED.**

1. Defendants' Motion for Summary Judgment (Doc. #34) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   7th   day of June, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record